FILED
2015 Feb-24  PM 02:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **MELINDA ANN GREEN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:12-CV-1994-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

## I.     INTRODUCTION

Plaintiff Melinda Ann Green ("Green") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").[1] Green timely pursued and exhausted her administrative remedies available before the

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[2] The court

has carefully considered the record and, for the reasons which follow, finds that the

decision of the Commissioner is due to be **AFFIRMED.**

## II.    FACTUAL AND PROCEDURAL HISTORY

Green was forty-two years old on her alleged onset date of August 1, 2008.[3] (Tr.

24, 213). She has a limited education and past relevant work as a nurse assistant, a

cashier, a cashier stocker, and a sales clerk. (Tr. 723, 765). Green alleged disability

due to osteoporosis, deteriorating bones, arthritis, and disc problems. (Tr. 435).

Green applied for DIB on July 1, 2008. (Tr. 213). Upon initial review, her

application was denied. (Tr. 213). Green then requested a hearing before an

administrative law judge ("ALJ"). Following that hearing, ALJ Jill Lolley Vincent

issued a decision on September 22, 2010 ("September 22, 2010, ALJ Decision"),

finding Green not disabled (Tr. 217-26). Green's request for review was denied by the

Appeals Council on March 28, 2012. (Tr. 230). She then filed a complaint seeking

review of that decision on May 25, 2012. (Doc. 1). The Commissioner filed a motion

to remand the case for further administrative proceedings pursuant to sentence six of

42 U.S.C. § 405(g), which was granted by the court on October 10, 2012. (Doc. 8).

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g)
fully applicable to claims for SSI.

[3] She originally alleged an onset date of June 30, 2008, but later amended it. (Tr. 403).

Prior to the court's remand, Green filed a new application for DIB on October 25, 2010 and an application for Supplemental Security Income (SSI) on April 3, 2012. (Tr. 252). A different ALJ (William Lawson) denied these new applications on September 20, 2012 ("September 20, 2012, ALJ Decision"). (Tr. 252-60). Following the Court's remand, ALJ Vincent held a new hearing on May 3, 2013. (Tr. 31-91). ALJ Vincent issued a new decision that also found Green not disabled. (Tr. 4-24). In this new decision, the ALJ considered all three of the above-referenced applications. (Tr. 4-24). This new decision is the Commissioner's final decision.

The Commissioner filed an answer to the complaint on March 31, 2014. (Doc. 9). Green filed a supporting brief (Doc. 12) on May 15, 2014, and the Commissioner responded with her own (Doc. 13) on June 16, 2014.

## III.   <u>STANDARD OF REVIEW</u>

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence

is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which

"must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)   whether the claimant can perform his or her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

5

## V.    ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 4, 2008, through her date last insured of December 31, 2010.

3.    Through the date last insured, the claimant had the following severe impairment: myalgias and arthralgias, small disc herniation in lumbar spine at L4-5 with lumbago, cervical degenerative disc disease status post cervical decompression and fusion, status post right carpal tunnel syndrome release and status post cervical surgery, adjustment disorder with depression and anxiety, and learning disorder.

4.    Through her date last insured of December 31, 2010, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CRF 404.1527(b) except for the additional restrictions described herein. The claimant can lift/carry twenty pounds occasionally and ten pounds frequently; can stand/walk six hours in an eight-hour day; can sit six hours in an eight-hour day; can never push and pull overhead with the bilateral upper extremities; can occasionally be exposed to extreme cold, wetness, humidity, unprotected heights, can rarely reach overhead bilateral upper extremities;[4] can occasionally stoop, kneel, crouch and crawl' can understand, remember

---

[4] The court suspects this to be a scrivener's error, as this same finding says earlier that she "can never push and pull overhead."

and carry out simple instructions; can maintain attention for two-hour time periods in order to complete an eight-hour workday; can adapt to changes in the work place that are introduced gradually and infrequently and can occasionally maintain interaction with the general public and co-workers.

6.   Through the date last insured, the claimant was unable to perform any past relevant work. (20 CFR 404.1565).

7.   The claimant was born on April 26, 1966 and was 44 years old, which is defined as a younger individual age 18-49, on the date last insured. (20 CFR 404.1563).

8.   The claimant has a limited education and is able to communicate in English. (20 CFR 404.1564).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant was not under a disability, as defined in the Social Security Act, from August 4, 2008, the alleged onset date, through December 31, 2010, the date last insured. (20 CFR 404.1520(g)).

12.   The claimant has not been under a disability as defined in the Social Security Act, at any time from October 25, 2010 to the present date. (20 CFR 404.1520(g)).

(Tr. 7-24).

## VI.   <u>ANALYSIS</u>

7

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Green objects to the ALJ's findings on her RFC for two reasons. First, she argues that the ALJ erred by altering the RFC findings in the September 22, 2010, decision and the September 20, 2012, decision only on the basis of a state agency physician's opinion from February 2011, without making specific RFC findings for the period after her date last insured. (Doc. 12 at 9-12). Second, she argues that the ALJ violated her duty to develop the record by failing to obtain a medical source statement for the entire period. (Doc. 12 at 10, 12).[6] The court will consider these two

---

[5] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

[6] Green also argues that the ALJ was inconsistent when she stated that she would not reopen the applications denied by the September 20, 2012, decision, but then went on to make a finding of no disability based on those applications. (Doc. 12 at 11-12). The Commissioner concedes this point. (Doc. 13 at 6). However, this inconsistency does not undermine the substance of any of the ALJ's findings, nor is it an automatic ground for reversal. The court resolves this inconsistency by holding that the ALJ did reopen the earlier decisions by citing them as bases for her finding of no disability. (*See* Tr. 24).

arguments in turn.

    <u>A.</u>    <u>There Was No Error In The ALJ's Failure To Discuss The RFC Findings From Earlier, Reopened Decisions</u>

Green's first argument is that the ALJ erred in finding a less restrictive RFC than found in the previous decisions. She reasons that the ALJ should have explained why her final RFC findings differed from those earlier ones. (Doc. 12 at 9). Green says that the ALJ's action "flouts the principle of 'the administrative law of the case' in which it has been held error to fail to discuss the earlier ruling or provide reasons for setting it aside where there is no evidence of improvement to account for a higher RFC." *Id.*

As to the issue of the administrative law of the case, Green's argument is meritless. She cites a case from this district, *Bloodsaw v. Apfel*, 105 F. Supp. 2d 1223 (N.D. Ala. 2000), which, as a district court decision, is not binding, but is persuasive authority. However, as the Commissioner's brief correctly explains (Doc. 13 at 7), the rule in *Bloodsaw* does not apply to this case. In *Bloodsaw*, the ALJ whose findings were under review had previously issued a denial of an earlier application by the same claimant. 105 F. Supp. 2d at 1228 n. 2. That earlier decision was "law of the case and therefore binding." *Id.* at 1228 n. 6. Therefore, the ALJ erred by failing to discuss the prior decision, despite finding in her second decision that the claimant did not even have a severe impairment, without any evidence that her condition had improved. *Id.*

9

In this case, on the other hand, neither of the earlier decisions (on September 22, 2010, and September 20, 2012) were final; rather, as discussed *supra,* n. 6, they were reopened by ALJ Vincent at the direction of the Appeals Council. (Tr. 21). Other cases considering this question have unanimously agreed that a decision that is not final is not part of the administrative law of the case. *See, e.g., Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009), *Rudolph v. Colvin*, No. 2:12-CV-2934-AKK, 2014 WL 3689781 (N.D. Ala. July 21, 2014); *see also Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("When the [Commissioner] remands cases for re-determination, there is no rule of issue preclusion").

Green's general argument — that the ALJ should have explained why her final RFC findings were less restrictive than found during the previous, reopened decisions — does not have any other basis as a ground for reversal. Green does not cite any law to establish an obligation on the part of the ALJ to explain why her RFC findings differ from those decisions, nor is the court aware of any such rule. Rather, the final RFC findings must be evaluated on the general statutory grounds, that is, whether they are supported by substantial evidence and correctly applied the legal standards.

### B.   There Was No Error In The ALJ's Reliance On A Nonexamining Physician's RFC Assessment

Green also argues that the ALJ erred by basing her RFC findings on remand on the opinion of a nonexamining, reviewing state agency physician. (Doc. 12 at 10-12).

10

She contends that the physician's opinion was entitled to little weight under Eleventh Circuit law, and also that the opinion was "out of date by more than two and a half years at the time of the ALJ's adjudication." (*Id.* at 10). Instead, Green argues, the ALJ's duty to develop the record obligated her to obtain a medical source opinion from a medical expert or consultative exam before making RFC findings. (*Id.* at 11).

A nonexamining physician's "opinion is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990). This is particularly so if it is contrary to the opinion of a treating physician. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). However, such an opinion is evaluated under the usual criteria for an expert opinion, such as the physician's qualifications and expertise in Social Security rules, the supporting evidence in the case record, and the physician's explanations given in support of his opinion. *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 850 (11th Cir. 2006) (unpublished); 20 C.F.R. § 416.927(f)(2).

Green cites an Eleventh Circuit case for the proposition "[t]he Commisioner's duty to develop the record includes ordering a [consultative exam] if one is needed to make an informed decision." (Doc. 12 at 11). In that particular case, the Eleventh Circuit raised the possibility, without reaching a ruling on the issue, that the ALJ had committed reversible error by failing "to order a consultative examination by an

orthopedist even though the [Social Security Administration's] consulting doctor recommended an evaluation." *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984). In another case, an ALJ was reversed by the Fifth Circuit for failing to order a consultative psychiatric examination. *Ford v. Sec'y of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981). There, the claimant had been experiencing emotional problems, which made her unable to work according to a report from a social worker. *Id.* The ALJ determined that she not disabled without the support of any medical opinion, and, furthermore, did so despite the claimant's request for a consultative examination. *Id.*

The facts of Green's case do not resemble these aforementioned cases. No other physician recommended an additional consultation, and there is a medical source statement from February 2011 on record as to her physical[7] RFC. (Tr. 639-46). Green does not contend that the record <u>before</u> February 2011 was insufficient. Rather, she asserts that the record as to her <u>later</u> condition was insufficient and so required a consultative examination. (Doc. 12 at 10). However, she has not provided evidence, or even alleged, that her condition changed after 2011. It is well-settled that "the claimant bears the burden of proving that he is disabled, and, consequently, he is

---

[7] Green has only challenged the ALJ's findings as to her physical RFC. (Doc. 12 at 8-12). However, there is also a medical source statement on her mental RFC. (Tr. 692-94).

responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The claimant, not the ALJ, bears the burden to provide medical records concerning the period after the filing of the application. *Id.* ("The ALJ, however, was in no way bound to develop the medical record for [the two years after the application was filed]"). Contrary to Green's assertion, the ALJ's duty to develop the record does not entail an obligation to, in effect, order check-ups to see whether the claimant's condition has worsened.

The ALJ had substantial evidence for her findings on Green's RFC. No medical opinion from a treating physician is present in the record, but the RFC assessments on record support the ALJ's findings. The previously discussed physical RFC assessment by Dr. Sellman (Tr. 639-45), to which the ALJ assigned great weight, reviewed Green's medical records, including a consultative examination by Dr. Decontee Jimmeh. (Tr. 634-7). Dr. Jimmeh's examination found no problems with Green's ability to walk, sit, stand, and take off and put on her shoes. (*Id.*). He also found a full range of motion in her wrists, fingers and thumbs, and no deficits in her extremities. (*Id.*). The treatment notes on record show complaints of pain and other problems resulting from Green's medically determinable impairments, but do not reveal any limitations greater than those found by the ALJ. Therefore, they also support the ALJ's findings. Green has not challenged the ALJ's findings regarding her mental

13

impairments, and the court's review finds them also to be supported by the reviewing psychologist's mental RFC assessment (Tr. 692-95), as well as the other evidence on record, particularly the psychological evaluation by Dr. Mary Arnold. (Tr. 675-77).

## VII.  **CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is due to be, and hereby is, **AFFIRMED**. A separate final judgment will be entered.

**DONE** and **ORDERED** this the 24th day of February, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge